BOTELER AND BELT *vs.* OTHO B. BEALL.—*December,* 1835.

An order of a court of equity directing its trustee appointed to sell mortgaged premises, to pay the mortgagee the amount of his debt, is not such an adjudication, that the trustee had received the amount of the purchase money, as estops the assignees of the mortgagee from denying the fact of such receipt.

Estoppels of this character are not favoured in equity, and can never preclude a court from an ascertainment of the truth of the fact, unless the estoppel be mutual, and operate with equal conclusiveness upon both parties to the litigation in which it is attempted to be used.

An audit as between mortgagor and mortgagee, does not affect the purchaser of the mortgaged subject.

A party who calls upon a witness by a cross interrogatory for a statement, cannot object to its admissibility on discovery that its operation is adverse to his interests.

A purchaser of mortgaged premises having settled with the trustee who made

the sale, and received a deed from him, and after a distribution decreed among creditors of the mortgagor, can no longer be regarded as.a party in court to any proceeding pending therein, and is not liable to be called on to account in a summary mode by petition.

The act of 1832, ch. 302, sec. 5, does not relate to petitions filed in a cause, the subject matter of which, ought to be pursued by an original bill, and this objection to the proceedings may be taken without exceptions filed for that purpose.

APPEAL from *Chancery.*

On the 6th day of January, 1830, *Lucy S. Brooke,* filed her bill of complaint in *Prince George's* county court, as a court of equity, against *Walter B. Brooke,* to foreclose a mortgage of real estate in *Prince George's* county, and for a sale of the mortgaged premises.. A decree was passed on the 27th of July, 1830, appointing her solicitor, *Edwin M. Dorsey,* trustee to make sale of the estate, or so much thereof as should be necessary for payment of the mortgaged debt. The trustee gave bond as required by the decree, with *Alexander H. Boteler* and *Edward W. Belt,* (the appellants) as his sureties, and on the 9th of September, 1830, he sold the estate to *Richard H. Brookes.* for $11,500, being an excess over the mortgaged debt of $7,627.

In his report filed on the 15th of September, 1830, the trustee states, " the trustee ascertaining that there were judgments against the defendant older than his mortgage, amounting, with interest and costs, to $3,700 and upwards, believed it would be impossible to sell a portion only of the said estate for a sum sufficient to cover the amount of the decree, and being under this impression believed it would be for the interest of all parties concerned, that the whole estate should be sold, unincumbered by said prior liens, and accordingly sold the said estate clear of the said incumbrances."    On the 20th of September, 1830, *Richard H. Brooke,* assigned his interest in said purchase to the appellee, *Otho B. Beall,* who on the same day paid the trustee, the sum of $4,000, and on the 2d of November, 1830, the further sum of $2,450, and on the 7th of December, 1830, the further sum of $1,000, for which he gave receipts in the following terms :—" Received,

September 20, 1830, of Mr. *Otho B. Beall,* four thousand dollars in part payment of the purchase money of the real estate of *Walter B. Brooke* under sale made by me on the 9th inst. to *Richard H. Brooke,* and by him sold to the said *Otho B. Beall.*                        E. M. Dorsey, Trustee."

" Received, November the 2d, 1830, of Mr. *Otho B. Beall,* two thousand four hundred and fifty dollars, in part," &c. as above. " Received, December the 7th, 1830, of Mr. *Otho B. Beall,* one thousand dollars, in part," &c. as above.

Mr. Dorsey, the trustee, was afterwards removed, and *Alexander Mundell,* appointed trustee in his stead. He has received from *Otho B. Beall* the balance of the purchase money, after deducting the foregoing payments, and has executed to him a conveyance.

On the 15th September, 1830, a petition was filed by *Samuel Duvall,* claiming to be a creditor of the defendant, *Walter B. Brooke,* by judgment recovered subsequent to the date of his mortgage to the complainant, and praying that the proceeds of sale, after payment of the complainant's claim, should be applied to the payment of his judgment, and of other subsequent incumbrances, to the exclusion of the incumbrances existing *before* the complainant's mortgage, and which are particularly mentioned in the trustee's report.

The county court on the 27th October, 1830, refused the prayer of this petition, and directed the trustee to apply the necessary amount of the purchase money to the satisfaction of the judgments of date anterior to the mortgage to the complainant, *Lucy S. Brooke,* and that he should bring the residue of the purchase money into court, to be applied according to the directions of the original decree.

On the 11th of January, 1831, the auditor in conformity with the court's directions, reported an account, applying of the proceeds of the sale, an adequate amount to pay the principal, interest and costs of the complainant's claim ; which report, was on the 26th day of July, 1831, duly ratified and confirmed by the court, and the *trustee (Dorsey)* directed to pay the same accordingly.

On the 14th of January, 1831, *Dorsey* having been re-moved, and another trustee (*Mundel*) appointed to complete the trust; and this latter trustee, having received from *Beall*, the purchaser, the sum of $4,140 55, the balance of the pur-chase money; by an order of that date, he was directed to apply the same, first to the satisfaction of the prior judg-ments, and the balance, if any, or so much as may be neces-sary, to the payment of the complainant's mortgage.

In obedience to this order, the auditor stated an account, appropriating the money thus received by the new trustee, to the satisfaction of the prior judgments, the trustee's commis-sion and expenses, and the balance, being $200 41 to the complainant's claim; which account was duly ratified, and the money paid accordingly.

In this stage of the proceeding, the present appellant's filed their petition in the cause, alleging themselves to be the assignees, for a valuable consideration of the mortgage to the complainant, and charging that the first payment made by *Beall*, the purchaser, of $4,000 to *Dorsey*, the then trustee, was made to him, not in that character, but in the character of attorney of the judgment creditors prior to the mortgage; and that he, *Dorsey*, having wasted and misapplied the money, and having since died insolvent, these judgments were subsequently paid by *Mundel*, the present trustee, out of the moneys received by him. And that *Mundel* in his set-tlement with *Beall*, the purchaser, having allowed him a credit for the said sum of $4,000, as though he had paid the same to *Dorsey* as trustee, they insist, that he is now liable for that amount with interest, which they pray he may be ordered to bring into court, to be applied to the payment of their claim as assignees of the mortgage.

The answer of *Beall* to this petition, admitted the appel-lants to be the assignees of the mortgage, and of the claims once due thereon to the mortgagee; but insisted, that they being the sureties of *Dorsey*, the trustee, did no more than comply with the condition of their bond as such, in paying the money; to compel them to do which, a suit was then

depending on the bond against them in *Prince George's* county court. He expressly denied that he paid the $4,000 to *Dorsey* as the attorney of the elder judgment creditors, for the purpose of having them assigned to his use or for any other purpose. On the contrary he expressly averred, that the money was paid him in his character of trustee, and none other, as parcel of the $11,500, which he (*Beall*) was to give for the mortgaged property, and that he accordingly took from him a receipt signed as trustee. He admitted that *Mundell* the second trustee, credited him with this payment, and that he had settled with said trustee for the entire balance due, paid the same, and procured from him a conveyance of the property, of which he is now in the enjoyment.

After the filing of this answer, the cause was transferred to the High Court of Chancery, and came on to be heard before the Chancellor, (*Bland*) upon the aforegoing petition, answer, sundry depositions, (which are omitted) and exceptions filed by the parties, pursuant to the act of 1832, ch. 302, sec. 5; and on the 15th September, 1834, his honour the Chancellor, dismissed the appellants' petition with costs, upon the ground that the judgment to *Dorsey* by *Beall* was so made, as to entitle the latter to have it considered as a payment *pro tanto* of the purchase money of the property in the proceedings mentioned.

From this order the appeal was taken by the petitioners.

The cause was argued before BUCHANAN, Ch. J. and ARCHER, DORSEY and CHAMBERS, Judges.

MAGRUDER, JOHNSON and T. F. BOWIE for the appellants, contended.

1. That the sum of $4,000 with interest is still due from *Beall*, as a part of the purchase money which the appellants have a right to claim, whether they were sureties in the trustee's bond or not, the assignment of the mortgage, giving to them all the rights and remedies of the original creditor.

2. That this sum was not paid as a part of the purchase money to be carried into court and distributed; but to be so

applied by *Dorsey*, as to procure the assignment of certain judgments to *Beall*, and that the receipt is explained by the parol evidence, which is admissible for that purpose.   *House vs. Low*, 2 *Johns.* 378.   *McKinstry vs. Pearsall*, 3 *Ib.* 319. *Tobey vs. Barber*, 5 *Ib.* 68.   *Putnam vs. Lewis*, 8 *Ib.* 389, *Hughes vs. O'Donnell*, 2 *Harr. and Johns.* 324.   *Glenn vs. Smith*, 2 *Gill and Johns.* 493.

3.  That although the order of the 26th of July, 1831, may be conclusive between the parties, this defendant cannot avail himself of it to defeat a claim which in equity he is bound to pay, because being no party to it, he can neither claim its protection, nor suffer from its operation.   *Gaither and Warfield vs. Welch's estate*, 3 *Gill & Johns.* 259.   *Neafie vs. Neafie, et al.* 7 *Johns. Ch. R.* 1.   *Cooper's Pl. Eq.* 269.

And further, that not having pleaded it in bar, he cannot claim the benefit of it, even if the court should think it would (if pleaded,) have constituted a defence to the relief sought by the petitioners.

4.  The propriety of the order is not drawn in question; nor could it have been successfully resisted by the trustee. The sale was to have been for cash, and he had so reported it to the court, and therefore, when the mortgagee applied for an order for the payment of the money, the trustee could not be heard to say, that he had suffered it to remain in the hands of the purchaser.   But in this controversy with the purchaser, if it be proved that in point of fact, he has not paid the whole money, he will be made to do so.   He will not be allowed to say, that because he ought to have paid it *before ;* he shall not be made to pay it at all.

Jones, Alexander, and Pratt, for the appellee, contended.

1.  That the parol evidence in the cause, the receipt of the trustee, and the proceedings in the cause, and particularly the Auditor's Reports, and decretal orders of the court, clearly prove, that the payment by *Otho B. Beall* to *Edwin M. Dorsey*, was made to the latter in his character of trustee,

and not as attorney for prior incumbrances, as is alleged in the appellants' petition.

2. That the receipt given by *Dorsey*, as *trustee*, admitting the payment to have been made in part of the purchase money for the estate sold by him as trustee, is under the circumstances, conclusive evidence of the verity of such payment. No proof has been offered or fraud, mistake, surprise or ignorance, of fact or law, on the part of *Dorsey*. On the contrary it is evident that *Dorsey* acted with perfect freedom and knowledge of his right, and of the intentions of the purchaser. 2 *Stark. Ev.* 704.

3. That the decretal order directing *Dorsey*, the trustee, to pay the claim of the complainant, is conclusive to show, that he had received a sufficiency of the fund for that purpose, and so long as the decree remains in force, this conclusion cannot be rebutted by any evidence whatever. *Butler and Belt vs. the State, use of Contee and Bowie,* 5 *Gill and Johns.* 511. *Iglehart vs. State, use Mackubin,* 2 *Ib.* 235.

4. That if the appellants' claim as assignees of the complainant, they can stand in no better condition, than she would have occupied if no assignment had been made, they are therefore bound by the decretal order passed in her favour, and upon her application, and by her acquiescence, in all the proceedings in the cause anterior to the assignment.

5. But in truth, it is shown that they were sureties for the trustee, and were therefore conclusively bound by the peremptory order directing him to pay the claim of the complainant. By discharging this claim they have only acquitted themselves of their legal obligation, and cannot make any demand against the purchaser which their principal himself could not have made.

6. That according to the petitioners, *Boteler* and *Belt's* own shewing in their petition, *Lucy S. Brooke,* the original complainant, had not, far less had the sureties of the trustee, admitting themselves bound for the money by paying it over to her in discharge of the action on their bond, any equity or claim whatever, in any form of action or suit at law or equity,

against the purchaser, *O. B. Beall:* inasmuch as by their said petition, they expressly state, that *Dorsey* received the money as attorney, of the prior judgment creditors, and was authorized so to receive, and so they show that those judgments were fully satisfied out of the first payments made by *Beall ;*—and that the mortgagee, *Lucy S. Brooke,* was clearly entitled to satisfaction, in preference to all other claimants out of the second payment to *Dorsey,* confessedly as trustee, and out of the last payment to the second trustee, *Mundell ;* and therefore she and her assignees, if they have suffered any wrong in the appropriation of the money, have done so by their own laches, in permitting the prior judgments to be twice satisfied out of the proceeds of sale ; and, if they, or any of them, have any remedy, it is or was against such judgment creditors.

7. That even if *Lucy S. Brooke,* as original mortagee and complainant in the decree of foreclosure ever had any possible equity or claim in this case, against *Beall* the purchaser, no such equity or claim can subsist in her now, or ever could have vested in the petitioners as her assignees ; her decree being satisfied by payment from the petitioners, as sureties, legally and equitably bound to pay and satisfy it, and they being incompetent to raise any claim against the innocent purchaser by the payment of their own debt.

8. That if the appellants are entitled to any relief whatever, it is by original bill and not by petition, the appellee having taken the trustee's deed for the property, and being no longer a party in court. *Butler and Belt vs. The State, use Mackubin,* 5 *Gill and Johns.* 520.

Dorsey, Judge, delivered the opinion of the court.

As one of the several grounds relied on to sustain the Chancellor's order, dismissing the petition of the appellants, it is insisted that the order of the county court directing *E. M. Dorsey,* the first trustee, to pay to *Lucy S. Brooke* the amount of her mortgage claim, is an adjudication that the trustee had received the amount of the purchase money applicable to

such purpose; and that the present appellants claiming under *Lucy S. Brooke,* are estopped from denying that fact, and consequently, can make no such claim as that preferred by their petition. Estoppels of this character are not favoured in equity, and can never preclude a court of Chancery from the ascertainment of the truth of the fact; unless the estoppel be mutual, or in other words, operate with equal conclusiveness upon both parties to the litigation, in which it is attempted to be used. The statement of the account by the auditor, whereon the order was passed, is a matter in which the purchaser has no interest (and unless for some special reason he be made so, which is not the case here) is no party; and consequently none of his rights are judicially determined by the audit. He being therefore, not precluded from contesting it, as far as it operates upon his interests, will not be permitted to use it as an estoppel to the rights of those who were properly parties to that proceeding.

This case we think bears a strong analogy to that of *Gaither and Warfield vs. Welch's estate,* 3 *Gill and Johns.* 259. where under our act of assembly, making the real estate of the debtor answerable for his debts, in case of his not having personal estate sufficient for their payment, it was held, that a creditor who had obtained an absolute judgment against the executor, might notwithstanding such judgment, in seeking a sale of the realty, offer evidence to shew, that in point of fact, the personal estate was insolvent; that assets had not come to the hands of the executor, wherewith it was his duty to have paid the creditor's claim.

The appellants having excepted to that part of the testimony of *Thomas G. Pratt,* which relates to the declarations of *Richard H. Brooke;* our attention is necessarily called to the interrogatory by which it was elicited; and thereby the appellants are at once deprived of all the grounds of opposition to this evidence, which, but for their interrogatory, naturally arise upon the face of the testimony. The appellants having called upon the witness by their cross interrogatory for the statement he has made, it is not for them, on dis-

covering its adverse operation, to object to its admissibility.

Exception being taken to the form of the proceedings in this case, viz. that the appellants instead of filing their petition as they have done, praying process against nobody, ought to have filed an original bill praying *subpœna* against all the necessary parties; it is urged in reply, that such objection cannot be raised in this court, since the passage of the act of assembly of 1832, ch. 302, sec. 5, which provides, that no objection to the sufficiency of the averments of the bill or petition shall be raised in this court, unless presented by exceptions in the court below. This reply, is no answer to the point urged by the appellee. The section of the act of assembly referred to, has no application to the question before us. It is not objected, that the averments in the petition are not sufficient to entitle the petitioners to the relief they have prayed; but that the relief for which they ask, cannot under the circumstances of this case, be obtained by petition, but must be sought by an original bill.

The act of 1832, having no bearing on the difficulty suggested by the appellee, is it well founded, is the next inquiry? In our opinion it is, the appellee, the purchaser, having long before the filing of the present petition, settled with the trustee, and received from him a deed predicated upon the receipt of the whole purchase money, the distribution whereof had been decreed amongst the creditors, according to the respective priorities, could no longer be regarded as a party in court to any proceeding still pending therein. As far as he was concerned, the proceedings in the county court had finally terminated, and he was dismissed from all further attendance thereon. He could not afterwards be treated upon any principle of equitable contemplation, as still present in court, and liable to be called on to account in the summary mode of petition. If sought to be charged on the grounds alleged in the petition filed against him, the proper mode of seeking such relief, is by an original bill.

But waiving all objection to the form of the proceeding,

have the appellants upon the proof in the cause, shown themselves entitled to the relief they have claimed? All the material facts constituting their equity, have been explicitly denied by the answer of the appellee. Has the effect of this answer been controlled by the contradicting evidence of two witnesses, or of one witness, and pregnant circumstances? Here are but two witnesses, whose testimony is in conflict with the statements in the answer, viz. *Philemon Chew* and *John E. Berry.* To give to them that credit to which they are entitled, in influencing the determination of this cause, it is proper to premise, that on the 15th of September, 1830, (the same day on which the trustee reported the sale to the county court, and obtained its provisional ratification) *Samuel Duvall,* a junior judgment creditor of *Walter B. Brooke,* filed his petition, insisting that the entire $11,500 should be paid into court by the purchaser, and that after deducting therefrom the mortgage debt, interest and costs, the whole balance, " must according to the strict rules of law and equity, be distributed among the creditors of the said *Walter B. Brooke,* who have judgments bearing date subsequently to the date of the said mortgage, and not among those of his creditors who have judgments against him of dates anterior to the mortgage," and "that the purchaser at the said trustee's sale, must take the lands subject to, and encumbered by liens, which have been obtained against them previous to the date of said mortgage, and which still remain unsatisfied; and that the said purchaser has no right to have any part of the sum of money, so as aforesaid given by him for said lands, appropriated to the payment of said judgments, which are elder than the mortgage." *Chew* in his deposition states, that " this deponent and the said *Otho B. Beall,* came to *Upper Marlborough* together for the purpose of consummating the contract, and after having arrived in town, the said *Otho B. Beall* consulted an attorney touching the title, after having done so, he, the said *Beall,* informed this deponent he could not take the land; that he had been advised, that the land was answerable for the debts of *Walter B. Brooke,* upon

which judgments had been rendered, as well subsequently, as prior to the date of the mortgage to *Lucy S. Brooke ;* and that it was probable, if he should pay the whole purchase money to the trustee, they might swell the purchase money to an amount larger in the aggregate, than he had agreed to give for it.   After consultation with *Thomas G. Pratt,* Esq. it was remarked to him, the said *Beall,* that the difficulty complained of, could be easily removed, that it would only be necessary for him, the said *Beall,* to pay off the oldest judgments against *Walter B. Brooke,* which were prior liens to the said mortgage, and take an assignment of them, which he, the said *Otho B. Beall,* could do independently of the trustee, or without dealing with him in the capacity of trustee in the payment of said judgments, as they were prior liens to those under which the trustee was directed to sell; that they did not amount to more than $4,000, and whenever the junior claimants and the trustee had settled the dispute which was about to ensue, with regard to the application of the trust money, he, the said *Beall,* could then pay the balance of the purchase money to whoever might be entitled to receive it. After the suggestion of this course to be pursued, the said *Otho B. Beall* consented again to take the land.   A difficulty then arose, as to whom the money due on the prior judgments should be paid.   It was at first proposed, that the said *Otho B. Beall* should pay the said money over to the sheriff of *Prince George's* county, as he then held in his hands the executions which had been issued upon the said judgments. It was then remarked, as this deponent thinks by *Mr. Pratt,* that he doubted whether the sheriff had authority to direct the said judgments to be entered for the use of the said *Otho B. Beall.*   It was then remarked by this deponent, that Mr. *Edwin M. Dorsey,* would be the most suitable person to receive the said money, and make the assignments as he, the said *Dorsey,* as an attorney of *Prince George's* county court, had the control of Mr. *Johnson's* business, who represented, as their attorney, the creditors who held the said prior judgments against the said land.   This proposition was agreed

to by Mr. *Beall,* and but for this arrangement, this deponent is convinced, that he, the said *Otho B. Beall,* would not have paid one cent of the aforesaid prior judgments, to said *Dorsey.*" According to the proof of the witness, *Beall* then definitely agreed to become the purchaser of the land, and on the same day, to wit, the 20th of September, 1830, as appears by exhibit No. 5, (filed by *Beall,* with his application in December, 1830, for the removal of *Dorsey* as trustee) *Richard H. Brooke,* the original purchaser, duly transferred his purchase to *Beall.* This deposition of *Chew* it has been urged, is so reasonable, so probable in itself, as to exclude every idea of mistake, or misapprehension as to the facts of which it speaks:—that the arrangement disclosed by the witness, was the true and only course that ought to have been suggested or thought of by any lawyer of skill or judgment in his profession. Is this position correct? The objection of *Beall* to take *Brooke's* bargain off his hands was what? That according to the advice of counsel, whom he had consulted upon the subject, he should in doing so, be obliged to pay the whole amount of the purchase money to satisfy the mortgage and subsequent judgments, and still hold the land subject to the prior judgments. To relieve him from this supposed dilemma was the object of the arrangement concerted, as it appears between *Chew* and Mr. *Pratt* a member of the bar. And how was it to be effected? By *Beall's* immediately becoming the purchaser in *Richard H. Brooke's* place, (which he did) and then paying off the prior judgments, and taking an assignment thereof to himself. How did this relieve him from the liability to which it was his determination not to subject himself? Should the county court, in deciding on *Duvall's* petition have concurred in opinion with *Beall's* counsel, that the purchaser took the land at his bid, subject to the prior judgments, would not *Beall* have been saddled with the very loss, the risk of which it was the object of the arrangement, and his fixed resolution that he should not incur. Would it be any consolation to him to be told, after bringing into court the whole purchase

money for distribution, between the mortgagee and subsequent judgment creditors, you have your assignment of the prior judgments? Of what value would be the assignment of those judgments to *Beall*? They would have been, if held by any body else, a lien upon his land, for which he had already paid the full value. In his hands they were utterly valueless; and yet they had cost him $4,000. Can it then be supposed, that any member of the profession, much less Mr. *Pratt*, would have given his sanction to such an arrangement, for such a purpose? It is impossible. Mr. *Chew*, to whose elevated character the counsel on both sides have borne testimony, from lapse of time, has forgotten the details of this transaction, or through want of legal information never fully comprehended them. The more probable solution of these proceedings is, that *Beall's* apprehensions about the rights of the subsequent judgment creditors, were removed by Mr. *Pratt's* assurances to *Chew*, that it was impossible that the purchaser could take the land, otherwise than discharged from the incumbrances of the prior judgments; and that he then agreed to become the purchaser of the land, and pay a part of the purchase money to the trustee to prevent a sale by the sheriff, on the executions issued on the prior judgments. That to protect himself against the contingency, as to the final ratification of the sale, he was to exact from the trustee an engagement, that he would apply the amount received to the satisfaction of the prior judgments, and cause them to be entered for his use. By this proceeding should not the sale be finally ratified, (and from some of its terms not being previously authorized by the decree, a doubt of its ratification might have existed) *Beall* could in no event be the loser. As strongly corroborating this view of the subject, see the testimony of *Thos. G. Pratt*. And this conclusion is furthermore strengthened by the succeeding portion of *Chew's* deposition, which states, " that very shortly after this, this deponent called upon the said *Otho B. Beall*, at his house, at the request of said *Beall*, when the said *Otho B. Beall* informed this deponent, that he had paid the said *Dorsey* the

sum of $4,000, but that he had not applied the same as he the said *Beall* had directed him ; and that the said *Dorsey* had not assigned the said judgments to his, the said *Beall's* use, as he had promised to do, for which purpose, he, the said *Beall*, said he had paid the said sum of $4,000 to Mr. *Dorsey*, not as trustee, but as attorney aforesaid. This deponent then asked the said *Beall* to show him *Dorsey's* receipt for the money, and upon the production thereof it appeared that *Dorsey* had signed it as trustee. This deponent expressed some surprise that he, *Beall*, had taken such a receipt, inasmuch as he had not paid over the said $4,000 to *Dorsey* in the capacity of trustee, but as the attorney for the purpose aforesaid. To which the said *Beall* replied, that he did not think it material, and that it was an oversight in him in taking the receipt from him as trustee ; that he had such unbounded confidence in *Dorsey*, that he did not think, that the taking the receipt from him as trustee at all material. This deponent then answered that he did not think it material, and further said, that it would have been a very little trouble for him the said *Beall*, to have seen the business done himself, and to have attended to the assignment of the aforesaid judgments."

Now unless *Chew* has made a mistake in alleging, that but for this arrangement, " this deponent is convinced that the said *Otho B. Beall* would not have paid one cent of the aforesaid prior judgments to said *Dorsey*," how could it be immaterial both in the opinion of *Chew* and *Beall*, whether the money was paid to *Dorsey* as trustee or as attorney ? If *Chew* and *Beall* both believed that to be the only mode which *Beall* could adopt, to avoid the liability to loss which he had determined not to encounter ; how could they without the slightest alteration in the circumstances of the case to warrant a change of opinion, of a sudden conclude that it was wholly immaterial whether *Dorsey* gave a receipt for the money, as trustee or as attorney ? Had the arrangement been made in the manner, and for the purposes represented by *Chew*, instead of assuring *Beall*, that his total departure from the

course agreed on was immaterial, he would have advised him forthwith to call on *Dorsey*, procure a proper receipt, to be taken from him as attorney of the prior creditors, and require him forthwith to enter the judgments for the use of *Beall.*   His failure to give such advice, furnishes the strongest evidence for the belief, that his statements, no matter with what purity of motive and conviction of their truth, he may have made them, are mistaken views of the matters in controversy in this case, arising from forgetfulness, or misapprehension as to the terms of the arrangement, the probability being, that the objection to the receipt was, not that it was given by *Dorsey* as trustee, instead of attorney; but that it did not in terms contain a stipulation from *Dorsey*, that he would apply the amount received to the payment of the prior judgments, and cause their assignment to *Beall.*   And that *Chew* and *Beall* talking over the subject concluded that the sale would be ratified; that *Beall* could not suffer by the prior judgments standing open, having much more of the purchase money yet in his hands than would discharge them; and therefore the omission in the receipt to stipulate for their payment was by no means material.

The fact of *Beall's* having the prior judgments entered to his use, (if indeed there be any evidence of that fact) upon their payment by the second trustee, instead of being entered satisfied, does not oppose these views.   Such an entry could not have been necessary at the time it was made to secure to *Beall* the protection, which according to the statements of *Chew*, it was his object to obtain, even if at the time the arrangement was adopted, it could have been available for that purpose; the county court having determined in October, 1830, that the purchase money for the land was the extent of his liability.   In requiring the prior judgments to be entered for his use, when they were ultimately paid by the second trustee, it is difficult to assign to *Beall* any satisfactory motive.   It may be, that ignorant of the legal consequences incident to the condition in which he was placed, he desired the entry in conformity to the original arrangement,

for securing him an indemnity against the court's refusal to ratify the sale ; or he may have intended thereby, to be the better prepared to resist any attempt on the part of any subsequent incumbrancer, not a party to the present proceedings, seeking to redeem upon the payment of *Lucy S. Brooke's* mortgage.

As confirmatory of the inaccuracy of *Chew's* recollection, or of his misconception of the conversations between himself and *Beall*, in relation to the facts and circumstances contained in his deposition, see the testimony of *Thos. Bruce, Rhoderick McGregor,* and *Thos. G. Pratt.*

The testimony of *John E. Berry,* as to conversations between him and *Beall,* yields no confirmation to the history of the transaction as given by *Chew,* but is in collision with it in several important particulars, and strengthens our opinion, that *Chew* laboured under a mistake as to the designs of *Beall.* If the communications of *Beall* to *Berry* are to be regarded as a detail of the entire arrangement under which the $4,000 were paid, it is wholly inconsistent with the evidence given by *Chew,* and bears upon its face its own refutation.   By the terms of the sale made by the trustee, *Beall* had primarily, no right to pay off the prior judgments : he did so at his peril.   Had he paid more thereon than was actually due : had the judgments been impeachable upon any legal or equitable grounds, the loss would have fallen upon him.   It was the province of the trustee, not the purchaser, to disencumber the estate sold ; and at the time the first payment was made by *Beall,* every motive of prudence and interest forbade his paying off, and thereby discharging the senior judgments, without either taking an assignment thereof, or the receipt of the trustee for the amount paid.   *Prima facie* it would otherwise have been an extinguishment of those judgment liens, and a letting in for their amount, the subsequent judgment creditors, thus defeating the object he designed to accomplish, and subjecting himself to the very responsibility he was endeavouring to evade.   It is manifest therefore, either that *Beall* did not fully state his proceedings in relation

to this payment, or that they were not understood, or have been forgotten by *Berry.* Looking to the common sense, and legal consequences of the transaction, as collected from the record before us, and applying them to the explication of *Berry's* testimony, we must in reason and charity presume, that the statement of the witness, that as *Beall's* attorney, *Dorsey* received the money, was an inference of fact drawn by *Berry* himself, from *Beall's* informing him that he had paid the money to *Dorsey*, that he, (*Dorsey*) might pay off the prior judgments. It is an error into which he might very naturally have fallen; but is a fact which if true, would be an act of folly in *Beall*, to which the circumstances of the case give no colourable imputation. The deposition of *Berry* then furnishes no foundation on which to rest an impeachment of the verity of the answer of *Beall.*

But waiving the difficulties suggested in relation to this evidence, when we look to the answer of the appellee, the receipt of the trustee taken at the time the contested payment of $4,000 was made, and the testimony of *Thomas G. Pratt*, we cannot discover grounds for a momentary hesitation in affirming, with costs, in this court, and in the court of chancery, the order of the Chancellor dismissing the petition of the appellants.

ORDER AFFIRMED WITH COSTS.