ELIZABETH H. BENSON, by her next friend, THOMAS L. BENSON *vs.* OREGON R. BENSON, and CARVILLA BENSON, his wife, and others.

*Surety on Guardian's bond—Fraudulent conveyances—Sale of Real estate under section 99, of Article 16, of the Code— Guardian and Ward.*

A surety on a guardian's bond, a short time before his death, which preceded that of the guardian, conveyed all his property—a large amount—to his two children, a son and a daughter, and at the same time entered into a written agreement with them by which each agreed to pay him, an annuity during his life, if he should demand it. The conveyance to the daughter, which embraced real estate only, was purely voluntary. The deed to the son embraced all the property, both real and personal, that had not been given to the daughter. The consideration set forth in the deed to the son was the sum of $17,000, but no money was paid at the time, but the son claimed that he paid, subsequently, debts due by his father to about that amount. The value of the real estate given to the son was about $40,000. The guardian died insolvent, owing his ward about three thousand dollars. On a bill filed by the ward to have these conveyances set aside as voluntary and in fraud of creditors, and the property thereby conveyed subjected, as far as necessary, to the payment of her claim, it was HELD:

That the conveyances, as against the claim of the complainant, were fraudulent and void.

The owner in fee of certain real estate, died intestate, leaving a widow, and several children, his heirs-at-law. The widow filed a bill in her own right, and as the next friend of the infants, charging that the land was not susceptible of an advantageous partition among the parties interested, and could not be divided without loss or injury to said parties, and that it would be for their interest and advantage that the same be sold, and the proceeds thereof divided among the parties according to their respective interests. A commission was issued to take proof, and it was shown that the land could not be divided without loss or injury, and a sale

*a*

would be advantageous. A decree was passed for the sale of the land, and the same was sold. Sections 36 and 37 of Article 16 of the Code, provide for the sale of the land of infants if the Court be satisfied that it will be advantageous to them. Section 99 of the same Article, provides that if it appear "that said lands, or tenements, &c., cannot be divided without loss or injury, to the parties interested, the Court may decree a sale thereof, and a division of the money arising from such sale among the parties according to their respective rights." HELD:

That the land in question was sold under section 99 of Article 16, of the Code, and the proceeds of sale to which the infants were entitled, went rightfully into the hands of their guardian, and the surety on his bond was liable therefor.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The bill in this case was filed by the appellant, Elizabeth H. Thomas, who subsequently intermarried with Thomas L. Benson, in her own behalf and of all persons interested in the estate of Joseph M. Brian, Sr., deceased, against the appellees, for the purpose, among others, of setting aside certain deeds from the said Brian to the appellees, Carvilla Benson and Joseph M. Brian, Jr., and subjecting the property thereby conveyed, to the payment of an indebtedness of the said grantor to the appellant Elizabeth arising from his suretyship upon the bond of Thales A. Linthicum, her guardian. The case is stated in the opinion of the Court. A *pro forma* decree dismissing the bill of complaint, was passed by consent, and the complainant appealed.

The cause was argued before MILLER, STONE, ROBINSON, IRVING, and McSHERRY, J.

*William S. Bryan, Jr.,* and *Isidor Rayner,* for the appellants.

Benson *vs.* Benson, *et al.*

*Henry C. Kennard,* and *S. Teackle Wallis,* for the appellees.

STONE, J., delivered the opinion of the Court.

Joseph M. Brian became security on the guardian bond of Thales A. Linthicum, who was the guardian of the complainant Elizabeth H. Benson about the year 1868. The said Joseph M. Brian died in 1878, and the guardian Linthicum in 1880. The same year in which he died Brian conveyed all his property to his two children, a son and a daughter. Linthicum the guardian, died insolvent and before any final settlement of his guardian accounts; and after his death it was discovered that he was largely indebted to his ward. It also turned out that the other two securities on the guardian bond were totally insolvent, and Mrs. Benson then filed the bill in this case to set aside the deeds made by Brian to his children as fraudulent and void against her; and whether these deeds are fraudulent and void as against her is the first and most important point in the case.

These deeds were executed by Brian a short time—a few months—before his death. The consideration set forth in the deed to his daughter professed to be love and affection; the consideration set forth in the deed to his son was the sum of seventeen thousand dollars. But the son proves that he did not pay his father a dollar in money, but claims to have paid subsequently debts due by his father to *about* that amount.

The deed executed by Brian to his daughter was for real estate only, and was executed on 3rd Sept., 1878. The deed to his son was executed on the following day, and embraced all the property, both real and personal, of the said Joseph M. Brian, except what he had before given to his daughter.

There is no evidence in the record of the value of the property given to his daughter, but there is evi-

dence of the value of the *real estate* given to his son, and it seems to have been worth about forty thousand dollars, or perhaps a little more. There was a considerable amount of personal property which passed to the son under the deed to him, which, if we understood his evidence correctly, was intended as compensation to the son for services rendered the father.

Simultaneous with the execution of these deeds the father, Joseph M. Brian, Sen., entered into a written agreement with his children, by which each agreed to pay him, *if he demanded it,* five hundred dollars a year. If he demanded any money from one he promised to demand an equal amount from the other, so that he might not be a greater burden on one than the other; and all arrears of his annuity were to be considered as paid and settled at the time of his death, so that his personal representative (if any) could make no claim for such arrears. The recital of these facts shows conclusively the character of this whole transaction.

A man advanced in life and of considerable wealth, about two months before his death, conveys all his property to his children. His son is to pay his debts, and his share was probably for that reason greater by the amount of such debts, than his daughter's. The deed to his daughter was confessedly a purely voluntary conveyance, and the deed to the son, upon the proof, is also a voluntary conveyance. The son did not pay a dollar for the property. All he professes to have done was to pay some debts of the father, not amounting at most to half the value of the *real* estate alone that he got. It needs no authority for so plain a proposition, that the son was not under these circumstances a purchaser for a valuable consideration and to be treated as such.

The deeds, the agreement, and the proof show that Mr. Brian's object was to divide his property between

Benson *vs.* Benson, *et al.*

his children in his life-time, retaining only an annuity sufficient for his wants for his life.

There is nothing in this record to show that Mr. Brian contemplated any fraud whatever. He may not, and probably did not, apprehend any loss on account of his being on this guardian bond. But whether he did or did not, these deeds cannot avail against the claim of these complainants, and must be declared, as against them, fraudulent and void. To hold otherwise would be to declare that an obligor on a bond might always relieve himself, when loss was apprehended by giving his property to his wife or child.

The remaining question for us to decide, is whether the bond sued on in this case is liable for the proceeds of certain real estate of the minors sold by Linthicum as trustee?

It is contended by the defendants that the land of the minors was sold under sections 36 and 37 of Art. 16 of the Code of 1860, which provides for the sale of the lands of infants, if the Court is satisfied that it will be advantageous to the infants to sell it.

The complainants on the other hand contend that the land was sold under sec. 99 of the same Article for the purpose of partition.

The difference is important. If sold under sec. 99 of Article 16 of the Code of 1860 for the purpose *of partition*, the proceeds went rightfully into the hands of the guardian.

If, on the contrary, the sale was under sections 36 and 37 of the same Article, although the guardian received and charged himself with the money, it is *very doubtful*, to say the least, whether his securities would be liable for it. We refrain however from expressing an opinion on that point, because it is not necessary to the decision of this case.

Benson *vs.* Benson, *et al.*

The decision of the question under which of these sections the land was sold, must depend upon the record of that case, which is spread out in this. In passing upon that record it must be understood that it comes before us collaterally, and that if there ·is enough in the bill to sustain the *jurisdiction* of the Court, we must endeavour to get at its true intent and meaning, notwithstanding the proceedings may be very irregular and informal.

Henry H. Thomas, of Anne Arundel County, died intestate, leaving a widow, Eleanor Thomas, and several infant children his heirs-at-law. He was seized in fee at the time of his death of certain real estate lying in that county, which descended to his heirs as co-parceners. The widow filed a bill in equity in the Circuit Court for Anne Arundel, and stated that she sued in her own right and as the next friend of the infants, naming them, and she charged

"That the aforesaid real estate is not susceptible of an advantageous partition among the parties interested, and cannot be divided without loss or injury to the said parties interested, and that it will be for the interest, benefit and advantage of the said infants, (naming them,) as well as your oratrix, to sell the aforesaid real estate and divide the proceeds thereof among the parties according to their interests therein."

The infants were made defendants and returned summoned, and a guardian *ad litem* was appointed. A commission was issued to take proof, and each and every witness deposed ·in substance, that the land could not be *divided* among the children advantageously, and that a sale would be advantageous.

The Court therefore passed a decree for a sale, and appointed a trustee to make it, and directing her to bring the money into Court for distribution.

Benson *vs.* Benson, *et al.*

The bill in this case is inartificially drawn, but we think from the bill itself, and all the subsequent proceedings, that it was filed under section 99 of Art. 16, of the Code of 1860, and should be treated as a partition proceeding.   That section, 99, provides "if it appears that said lands or tenements, &c., cannot be divided without loss or injury to the parties interested, the Court may decree a sale thereof, and a division of the money arising from such sale among the parties according to their respective rights;" and the section further provides that an infant might file a bill by his next friend.   The bill is filed by the next friend of all the infants, and although it would have been better to have filed it by next friend of one infant against the others, yet the error is not a jurisdictional one.

The bill states in express terms that the land could not be divided without loss and injury to the parties interested, and that it would be for the advantage of the parties to have it sold.

The only reasonable construction that we can place upon this bill, is that the sale was, primarily at least, asked for upon the ground that it could not be divided. All the witnesses were first examined upon the question whether an advantageous division could be made, and upon their proving that it could not be so made, they were then examined as to whether it would be advantageous to sell it, and they proved that it would.

In a proceeding under sections 36 and 37 of the same Article, no reference is necessary or proper to a division of the property, and no proof is necessary upon that point.   In proceedings under these last mentioned sections, all that is necessary to aver or prove is that a sale will be advantageous.   But in a proceeding under section 99, before the Court is authorized to sell, it must be proved that the property cannot be divided without loss or injury.   This was the first thing proved

in this case, and when proved, the jurisdiction to sell attached.

The very words used in section 99 "cannot be divided without loss or injury to the parties interested," are the words used in the bill, and show, we think, beyond doubt that it was a proceeding under that section.

We are therefore of opinion that the proceeds of the sale were properly in the hands of the guardian, and that his security is liable therefor. While, as we have said, the deeds, the subject of controversy here, are void against the claims of the complaining creditors, and the property must be sold if necessary to pay them, yet it is proper to state that Joseph M. Brian, Jr., is entitled out of the proceeds of the property that he received from his father, if such sale should be made, to be allowed a credit for all the debts due *bona fide* from his father, and which he can· show that he paid after he received a deed for the property.

The decree must be reversed and the cause remanded that a decree may be·entered in conformity to this opinion.

*Decree reversed, with costs.*