# JANE A. THOMPSON et al. *vs.* WILLIAM G. WILLIAMS et al.

*Fraudulent Conveyances—Evidence—Badges of Fraud.*

A daughter loaned to her father fifteen hundred dollars and received as security a mortgage on three hundred acres of land. She also advanced the sum of nine hundred dollars to prevent the sale of one hundred and sixty acres of land, mortgaged by her father and took an assignment of the mortgage, and at other times she loaned to her father about six hundred dollars. Afterwards the father conveyed to his daughter the said real estate by a deed expressed to be for the consideration of one thousand dollars and love and affection. Six months after the conveyance a mortgage creditor of the father obtained a decree *in personam* against him, and filed the bill in this case to vacate the said conveyance, alleging that it was fraudulent as against him. *Held*, upon the facts, that the consideration for the conveyance to the daughter was adequate; that the deed was made and accepted in good faith, and that the circumstances that the father and daughter continued to live together upon the land conveyed after the execution of the deed as they had previously, the father managing the farm and accounting to his daughter for the profits, and the failure to have the property transferred to the name of the grantee upon the assessment books, or to assign to her a policy for fire insurance on the buildings, do not constitute evidence of fraud.

The fact that the conveyance by a father to his daugther, to whom he was indebted ante-dated by six months, a decree against him by another creditor, does not show that the conveyance was made with intent to hinder and delay the creditors of the grantor; and a creditor has the right, apart from the provisions of insolvent law, to prefer one creditor by a conveyance made in good faith.

Appeal from the Circuit Court for Anne Arundel County (Thomas, J.)

The cause was argued before McSherry, C. J., Fowler, Boyd, Pearce, Schmucker and Jones, JJ.

*James M. Munroe*, for the appellants.

*Robert Moss*, for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Anne Arundel County. By that decree, dated on the 7th day of July, 1904, a bill of complaint filed by the appellants was dismissed and the relief sought thereunder was denied. The proceedings were instituted to procure the annulment of a deed executed on the 3rd day of August, 1900, by Dr. William G. Williams and his wife, Matilda D. Willlams, and which conveyed to their daughter, Carrie G. Williams, about four hundred and sixty acres of land. The grantors and the grantee are the defendants in the suit. It was alleged that the deed was fraudulent and void as against the complaining creditor and that the consideration was pretended and not real. It appears that in February, 1884, the above-named grantors being indebted to William H. Thompson in the sum of two thousand dollars secured the payment thereof by mortgage upon two hundred and seventy-five acres of land other than that conveyed to their daughter; and that after the death of Thompson, the mortgagee, the executrices of his estate, sold the mortgaged property under a power of sale contained in the mortgage, for eleven hundred dollars, and on the 21st of February, 1901, procured a decree *in personam* against the mortgagors for the sum of fourteen hundred and thirteen dollars, the amount of the deficiency after crediting the net proceeds of sale upon the mortgage indebtedness. This decree *in personam* was entered up *after* the date of the conveyance to Carrie G. Williams, and it is that indebtedness which the plaintiffs aver the deed was intended to prevent the creditor from collecting.

The deed which is assailed purports to be founded on a consideration of one thousand dollars and love and affection. In point of fact there was a money consideration of three thousand three hundred and sixty-three dollars and sixty cents to support it. The undisputed testimony adduced by the plaintiffs themselves quite satisfactorily establishes the following state of facts: Carrie G. Williams taught school in Anne Arundel county for fourteen years and received a salary of

three hundred and fifty dollars a year, except for two years during each of which there was a reduction of one month's pay. She deposited her earnings in the Eutaw Savings Bank of Baltimore. She was evidently a very economical, thrifty and prudent girl. Her father was a practicing physician with considerable landed property; but his practice fell off, his land deteriorated and his resources became greatly reduced. He was finally forced to borrow money and the mortgage for two thousand dollars was placed upon one parcel of his real estate. Conditions did not improve thereafter and he then began to borrow from his daughter. The first loan she made him was the sum of one hundred dollars on May 12th, 1895, for which he gave his promissory note of that date. The accrued interest on that sum up to the date of the deed to her was thirty-one dollars and thirty-five cents. The next loan she made him was on May the 4th, 1896, and the amount was fifteen hundred dollars, which was secured by a mortgage on the real estate subsequently conveyed to her by the deed which these proceedings seek to impeach. No interest was paid by the mortgagor and the amount thereof which had accrued up to the date of the deed was three hundred and eighty-two and twenty-five cents. In 1897, 1898 and 1899 she advanced to her father four hundred and fifty dollars with which to pay taxes and other pressing claims, and she took his promissory note therefor. A certain Sophia Kaiser held a mortgage dated July 14th, 1897, for eight hundred and fifty dollars on two tracts of land described in the deed of August the third, 1900, and she instituted proceedings to foreclose in the summer of the year just named. Thereupon Carrie G. Williams advanced the sum of nine hundred dollars to prevent a sale, and took an assigment of the mortgage. Thus, the total amount of actual cash which Miss Williams had loaned to her father was two thousand, nine hundred and fifty dollars; fifteen hundred dollars of which were secured by a mortgage and eight hundred and fifty dollars more were secured by the Kaiser mortgage which she held by assignment. The accumulated interest on the whole indebtedness due by

her father to Miss Williams increased the sum he actually owed her to three thousand, three hundred and sixty-three dollars and sixty cents. The difference between the principal sums thus secured and the total amount due was just about one thousand dollars. As the mortgages which she held were liens on the property subsequently conveyed to her, and were merged in the title she acquired under the deed unless she elected, and manifested an intention, to take the estate and keep up the charge, *Polk* v. *Reynolds*, 31 Md. 111; it was entirely accurate to set forth the consideration in the deed at one thousand dollars, that sum being the amount due over and above the principal of the debts named in the two mortgages.

But was the consideration adequate? Much stress was laid in the argument upon the assessed valuation of the land for the purposes of taxation; but an assessment for such purposes is by no means controlling as a standard by which to ascertain actual values of property. The two hundred and seventy-five acres sold under the Anderson mortgage were assessed at $3,300 and the improvements at $610, or a total of $3,910 and yet the whole property, land and improvements, brought at public sale only eleven hundred dollars, or, considerably less than one-third of the assessment. The testimony of Benjamin Watkins values the three hundred acre tract at seven dollars per acre or twenty-one hundred dollars for the whole; and he estimates the one hundred and sixty acres to be worth eight dollars per acre, or twelve hundred and eighty dollars. According to his testimony the whole four hundred and sixty acres are worth only three thousand, three hundred and eighty dollars. Edward Hall of B valued the property at three thousand dollars. One witness, it is true, places a value of $6,240 on the land—that is the sum at which it was assessed; but the actual sale made under the Anderson mortgage demonstrates the unreliability of that assessment.

The father being incontestibly indebted to the daughter in the amount already named, he had a clear legal right, apart from the provisions of the insolvent laws, to prefer her to any

other creditor by conveying the property to her, if that conveyance was made in good faith.    A debtor has the right, at common law, to prefer one creditor to another by a *bona fide* conveyance of his property.    *Cole* v. *Algers & Runge*, 1 Gill, 142; *Cunningham* v. *Dwyer*, 23 Md. 219; *Totten* v. *Brady*, 54 Md. 170.    It is a fallacy to assume that a sequence of events, of necessity, indicates an interdependence of the one upon the other or a causal relation between them.    It would be an error to insist that merely because the deed to the daughter ante-dated the *in personam* decree by a space of six months and a few days, that theretofore, the deed was made by the grantors and accepted by the grantee with the design and intent to hinder and delay the enforcement of the decree.    The two events have inherently no connection with each other. But even if this were not the case, there would be nothing either reprehensible or illegal—laying out of view the insolvent system—in the debtor preferring, by that method of settlement, the one creditor over the other, if the transaction was grounded on good faith and was a not mere subterfuge and device to hinder and delay creditors, in which both grantors and grantee knowingly participated.    And this brings us to the only remaining inquiry, which is, whether the deed was made and accepted in good faith.

When a deed is assailed for fraud, the *onus* of proof is on the party attacking it.    The deed itself is *prima facie* evidence of what the consideration was upon which it was executed. *Glenn* v. *Grover & McColm*, 3 Md. 212.    To overcome the presumption which always exists in favor of innocence, when the fact to be proved involves moral delinquency (*Conner* v. *Pendleton*, 8 Md, 337), various circumstances, usually denominated *indicia* or badges of fraud, have been relied on.    These *indicia* are open to explanation, and they are, therefore, not necessarily conclusive, as is an irrebuttable legal presumption. In many instances they furnish strong and satisfactory evidence of the existence of fraud; but as they are relative and not absolute as respects their probative value, the special circumstances accompanying each inquiry must be known and con-

sidered in order that the weight properly attributable to those *indicia* may be given to them.    Ordinarily, when a grantor who is heavily indebted remains in the possession and apparent control of property which he has conveyed away, and the rights of creditors are prejudiced by the conveyance, such possession and control will be considered an evident badge of fraud.    *Watkins* v. *Stockett*, 6 H. & J. 434; *Stewart* v. *Iglehart*, 7 G. & J. 133.    Secrecy in the transaction, unusual clauses in, and an artful and forced dress ·or appearance given by the parties, to the instrument; its execution pending an action against the grantor; and above all, the existence of any secret trust in favor of the debtor, or of any express trust or incumberment of his property which may make the remedy of the creditor more difficult, are the common *indicia* of fraud.    There is literally no evidence of a secret trust in favor of the grantor; there is no express trust in his behalf; there was nothing clandestine in the transaction and no unusual clause in and no artful dress or appearance given to, the conveyance by the parties.    The only circumstances which are relied on to prove the alleged fraud are the continued possession of the property by Dr. Williams; his apparent control over it; the omission to have it transferred to the grantee on the assessment books; the failure to assign to Miss Williams the policy insuring the buildings against loss by fire, and the execution of the deed a few months prior to the entering of the *in personam* decree.    Do these circumstances in this case establish the bad faith imputed to the defendants by the bill of complaint?

It must be borne in mind that before the execution of the deed, Dr. Williams, his wife and children, including the grantee, Miss Carrie, all occupied the dwelling-house on the premises which were subsequently conveyed by that deed.    Is it to be assumed that because Miss Williams did not turn her father and mother out of the house after she had purchased the property, the whole transaction was a sham and was devoid of good faith?    Is it a legitimate inference that the sale was pretended and not real because the daughter after acquiring the property permitted her father to remain under the shelter of the roof

which had been his for years?    Unless it be an unbending and
inexorable requirement of the law of evidence that when a
child buys from a parent property owned by the latter, the
child, to avoid the imputation of fraud in the transaction, must
at once and for all time close the door of her home against the
father from whom she purchased it; the mere fact that he con-
tinued to reside on the premises after the conveyance, as he
had done prior thereto, cannot impeach her good faith in ac-
quiring title to the land.    The law exacts no such unfilial and
unnatural conduct to vindicate the integrity of the transaction.
There must be something more to convict the grantee of
fraud.

The evidence abundantly shows, and shows without a syllable
of contradiction, that the management and control of the
property by Dr. Williams was not in his own interest, but
solely in behalf of his daughter.    He rented portions of the
property to tenants for her; he collected the proceeds of the
crops and turned over to her every cent of those proceeds;
and the supervision he gave to the property was for her ben-
efit and was such as she was unable herself to bestow.    There
is nothing in all this, in view of the entire surroundings, to in-
dicate bad faith or moral delinquency on the part of the
grantee.    The failure to have the property transferred from
the grantor to the grantee on the assessment books, is not a
circumstance having any probative value at all.    The entry
on the assessment books is no evidence of title adverse to
Miss Williams.    *Chew* v. *Beall*, 13 Md. 349; *Smith* v. *Wood*,
31 Md. 298.    The omission to correct the entry so that it
would correspond with the fact of ownership can, therefore,
furnish no basis for a presumption that the grantee is not the
*bona fide* owner of the property.    The two hundred and sev-
enty-five acres sold under the Thompson mortgage in 1900 still
remained charged to Dr. Williams on the assessment books
in 1902, and yet it can hardly be inferred from that fact, that
there was any bad faith on the part of the purchaser of that
tract of land.    How the neglect to transfer the policy of in-
surance can indicate *mala fides* we do not perceive.    If the

buildings should be destroyed by fire neither the grantee nor the grantor could recover on the policy. That is all we need say upon the subject. The mere proximity in point of time between the execution of the deed and the rendition of the decree has already been alluded to and we have said that *in this case* no inference of fraud could be fairly drawn from the circumstance. *Malcolm* v. *Hall*, 9 Gill, 177. We may add, however, that the explicit testimony adduced by the plaintiffs themselves upon the examination of Miss Williams and her father, both of whom the plaintiffs called as witnesses, not only negatives any semblance of fraud on the part of either, but conclusively establishes the utmost good faith throughout the entire transaction on the part of both.

The conclusion we have reached is in accord with the one arrived at by the Circuit Court, and, for the reason herein set forth the decree appealed against will be affirmed.

*Decree affirmed with costs above and below.*

(Decided January 13th, 1905.)