G. CLIFTON SUNDERLAND AND G. CLIFTON SUND-
ERLAND AND EUGENE P. CHILDS, EXECUTORS
OF FREDERICKA C. SUNDERLAND,

*vs.*

HENRY EBLING, JAMES HENRY EBLING AND
FRANK H. STOCKETT, ASSIGNEE.

*Debtors*: *preferences; fraudulent conveyances; void considera-*
*tion.  Parent and children*: *promise of pay-*
*ment for services not presumed.*

Apart from the provisions of the bankrupt or insolvent laws,
a debtor has the right to prefer one creditor to another, when
done *bona fide,* without fraudulent intent, and upon proper
consideration.                                                                    p. 688

Services rendered by children to their parents, while resid-
ing with them, without any agreement for compensation, do
not constitute a valuable consideration for a conveyance by a
parent to a child, and such conveyances are void as against
judgment creditors.                                                            p. 690

*Decided April 14th, 1915.*

Appeal from the Circuit Court for Anne Arundel County.
In Equity.  (BRASHEARS, J.)

The facts are stated in the opinion of the Court.

. The cause was argued before BOYD, C. J., BRISCOE, BURKE,
THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Ridgely P. Melvin* and *Robert Moss,* for the appellants.

*Daniel R. Randall,* for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The object of the proceedings in this case is to vacate and set aside a conveyance of real estate from a father to his son, on the ground of its being a voluntary conveyance, without legal consideration, fraudulent, in respect to the plaintiff, a judgment creditor of the grantor, and therefore null and void, as to her claim.

The deed in question is dated the 23rd day of May, 1910. and in consideration of the sum of five dollars and other good and valuable considerations, the grantor conveyed in fee simple unto the grantee, the tract of land mentioned therein, situate in the Second Election District of Anne Arundel County, containing one hundred acres more or less, together with the buildings and improvements thereon.

At the time of the transfer and conveyance of the farm or tract of land, it was encumbered by a mortgage, dated the 8th day of December, 1908, which had been given by the grantor to Mr. Eugene W. Iglehart, of Anne Arundel County, to secure a loan of one thousand dollars borrowed by him from Mr. Iglehart.

On the 12th of April, 1913, the Iglehart mortgage was foreclosed and the property purchased at the foreclosure sale, for the sum of $2,200, by the defendant, James H. Ebling. the owner of the equity of redemption, under the deed here in dispute and by Mrs. Mace, children of the grantor, in the deed.

It is conceded that the property sold for more than sufficient to pay the Iglehart mortgage, debt, interest and costs, and it is this surplus or balance of the purchase money amounting to about $1,000, and now in the hands of the trustee or assignee of the mortgage, for distribution, which the plaintiff seeks, by a decree of this Court, to recover and to have applied to the payment of a judgment, dated the 19th day of Novemeber, 1912, in favor of the plaintiff against the defendant, Henry Ebling and others, for the sum of $9,-767.25 in the Circuit Court for Anne Arundel County.

It appears from the record that the debt secured by the promissory note upon which this judgment was rendered, was contracted prior to the deed to the son, and was given to secure the payment of the sum of $12,000, borrowed from the plaintiff by the Braun Packing Company of Anne Arundel County and endorsed by the defendant, Henry Ebling and others, stockholders and officers of the company. The note is dated in November, 1909, and was secured by a mortgage to the plaintiff covering the property of the Packing Company. This mortgage was foreclosed and the property sold on or about the 26th of May, 1911, and the proceeds of sale being insufficient to pay the debt, a judgment ($9,767.25) was obtained against the defendant Ebling and the other endorsers on the note, for the balance of the mortgage debt due the plaintiff.

The real questions in the case are, first: whether the deed from the father to the son was voluntary and without consideration; second: whether there was a valid subsisting debt from the father to the son at the date of the execution of the deed, and, third: whether the deed is fraudulent and void as to creditors.

It is well settled in this State that a debtor has the right, apart from the provisions of the bankrupt or insolvent laws, to prefer one creditor to another when done *bona fide,* without fraudulent intent and upon proper consideration. *Green* v. *Grover,* 3 Md. 225; *Thompson* v. *Williams,* 100 Md. 195; *Tyner* v. *Johnson,* 119 Md. 627; *Zimmer* v. *Miller,* 64 Md. 296; *Commonwealth Bank* v. *Kearns,* 100 Md. 208.

It will be seen that the alleged consideration for the deed in this case as shown by the proof is for services rendered to the father by the son after he had attained the age of twenty-one years, and while residing at his father's home as a member of his family and without an express contract either for their performance or a promise made for their payment. The authorities are clear that the law implied no promise to pay for services rendered by members of a family to each other under the facts and circumstances of a case like this.

In 20 *Cyc.,* p. 533, it is said: "Services rendered by chil-
dren who have attained their majority, to their parents while
residing with them, without any agreement for compensation,
do not constitute a valuable consideration for conveyance by
the parents, since the law implies no promise to pay for serv-
ices rendered each other by persons standing in this relation."

In *Hack et al.* v. *Stewart et al.,* 8 Penn. State Reports,
213, it is said: "Where a son, after he had attained the age
of twenty-one years, continued for a few years to live with
his father, who supported him, and to labour and work on
the farm as he had previously done; and no express contract
as to the payment of wages by the father for the services of
the son, was proved between them: the father cannot, after
he becomes indebted and involved, create a debt in favour of
the son, which had no legal existence until that time, and in
consideration of such debt convey his property to the son at
the expense of creditors; and a conveyance from the father
to the son, under such circumstances, would be fraudulent
and void.

In *Bump on Fraudulent Conveyances,* p. 232, it is said:
"The law implies no promise to pay for services rendered by
members of a family to each other, whether by children,
parents, grandparents, brothers, stepchildren, or other rela
tions. The rule rests upon the simple reason that such ser-
vices are not performed in the expectation or upon the faith
of receiving pecuniary compensation. The services rendered
in such cases are mutual, and it may often be difficult to de-
cide upon which party the principal benefit is conferred.
Services so rendered do not, therefore, constitute a valuable
consideration for a transfer." *Irish* v. *Bradford,* 64 Iowa,
303; *Savings Bank* v. *McLean,* 84 Mich. 625; *McCord* v.
*Knowlton,* 79 Minn. 299; *Sanders* v. *Wagonseller,* 19 Pa.
State, 248; *Updike* v. *Titus,* 13 N. J. Eq. 151.

In *Updike* v. *Titus, supra,* under a state of facts some-
what similar to those here, the Court said: "So far as relates
to the claim for services rendered, the mortgage is without
consideration and fraudulent as against creditors. The law

implies no promise to pay for services rendered by members
of a family to each other, whether by children, parents,
grandparents, brother, stepchildren, or other relations. No
action can be maintained for such services in the absence of
an express contract or engagement to pay for them. The
rule rests upon the simple reason, that such services are not
performed in the expectation or upon the faith of receiving
pecuniary compensation. Ordinarily, for a service rendered,
the law implies a promise to pay corresponding with the
value of the service; but for services rendered by members
of a family to each other no promise is implied for remunera-
tion, because they were not performed in the expectation, by
either party, that pecuniary compensation would be made or
demanded. The authorities upon this subject are numerous
and decided, and the principle upon which they rest too
clear for doubt." *Winchester* v. *Reid,* 53 N. C. 377; *Moore
on Fraudulent Conveyances,* p. 380, and cases there cited.

There is no evidence in this case of any express agreement
of the father to pay the son for his services and the subject
does not appear to have been discussed between them until
about the date of the Iglehart mortgage and the date of the
execution of the judgment note to the plaintiff.

The son testified there was no fixed amount agreed upon
as compensation and upon cross-examination testified as
follows: Q. At the time your father placed the mortgage
loan on his 100 acre farm, where were you living? A. I
was living there then. Q. What did your father owe you at
that time, if anything? A. You mean how much money?
Well, I wouldn't work for nobody under $25 a month. I
worked 1907, 1908, 1909 and 1910; that would be about
$1200 I guess at $300 a year, $25 a month. Q. What se-
curity had you for this or what promise, if any, from your
father to secure you? A. I didn't have none from him, but
I went and told him he would have to give me some. Q. Did
your father make any contract with you to secure you or to
reimburse you after the $1,000 was borrowed? A. Yes, we
kind of agreed altogether; of course, my sisters was in the

thing too; and us three kind of objected after we had been working there so much. Yes, we made an agreement among ourselves, but there were no papers drawn up. Q. What was that agreement? A. The agreement was that we was to take the place; then I bought the place, and I had to promise to pay my two sisters and brothers, and that I would be responsible for their money.

John Jungers, a witness on the part of the defendants, testified: "I have heard his father say that he was not paying him in cash. This conversation arose several years ago when I told Mr. Ebling I was paying my boys from the time they were able to work; he replied that he was not paying his children because he was not able to do it."

John H. Wagner, another witness on the part of the defendants, also testified: "I have heard Mr. Henry Ebling say on some occasions when we were discussing wages for our sons that he had never paid James a dollar in his life in the way of wages and that his son had left opportunities of at least $40.00 a month to work for him for nothing."

Mr. Iglehart, who held the mortgage on the property, at the time of its transfer to the son, testified as follows, in answer to the following interrogatories: "Q. During the existence of this mortgage, with whom did you have all your dealings? A. Mr. Henry Ebling. Q. Did you know his son, Mr. James Henry Ebling? A. No, I never had any dealings with him at all. Q. Who paid the interest on this mortgage? A. Mr. Henry Ebling. Q. Did you know that while your mortgage was in existence Mr. Henry Ebling attempted to transfer title to this property to his son, James Henry Ebling? A. No, I knew nothing whatever of that. Q. Were the interest payments made promptly by Mr. Henry Ebling, and were the covenants of the mortgage kept up? A. The interest payments were made promptly for a time, that is, up to and including the interest which fell due on the 8th of June, 1912. So far as I know, the covenants of the mortgage were kept up until that date. Q. Will you kindly state, then, just how it happened that you came to foreclose this mortgage? A. On

or about the 5th day of December, 1912, at about 11 o'clock in the morning, Mr. Henry Ebling and Mr. Daniel R. Randall called at my office. As nearly as I can recall, Mr. Randall opened the conversation by stating that the next interest on Mr. Ebling's mortgage would be due in three days (that is, December 8, 1912), and he wished to ask me a hypothetical question, to wit: If Mr. Ebling should default in the payment of said interest would I consider the mortgage in default and proceed to foreclose within a week? I answered that I would not, for the reason that it would place me in a bad light before the public as having exercised "snap judgment." Mr. Randall then stated that the taxes for the year 1912 were then due and had not been paid, in consequence of which the mortgage was already in default, and asked if that fact would justify me in an early foreclosure. I answered that it would not, as I was not willing to foreclose on such short notice. As nearly as I can recall, neither Mr. Randall nor Mr. Ebling stated their reasons for desiring an early foreclosure, and I did not ask. Shortly thereafter both gentlemen left my office. I waited about four months after this, or until sometime in April, 1913, for Mr. Ebling to pay the interest on his mortgage, which had become due on December 8, 1912. At the end of that time, and after due notice of my intention, the interest being still unpaid, I placed the mortgage in the hands of Mr. Frank H. Stockett, attorney at law, with instructions to foreclose.

It thus appears that notwithstanding the father had conveyed the farm to the son James for all of his children in May, 1910, he continued to pay the interest to the mortgagee until 1912, and performed all the covenants of the mortgage to the time when he himself asked for its foreclosure.

Apart from this no payment was ever made on account of the services alleged to have been rendered by the son and no settlement at any time whatever to ascertain the amount due by the father to the son; nor does any demand of payment appear to have been made, until the apparent insolvency of the father, and the execution of the mortgages, stated herein.

Upon this evidence, or in fact, in the absence of all proof to show the *bona fides* of the transaction, the deed from the father to the son in this case must be held as a voluntary conveyance, and void as against the plaintiff, a judgment creditor.

As was said by this Court in *Benson* v. *Benson,* 70 Md. 256, it needs no authority for so plain a proposition that the son was not under the circumstances a purchaser for a valuable consideration and cannot be treated as such under the facts of this case. *Worthington* v. *Shipley,* 5 Gill. 460; *Somerville* v. *Stanfield,* 28 Md. 216; *Goodman* v. *Wineland,* 61 Md. 449; *Whedbee* v. *Stewart,* 40 Md. 424.

The facts of the case of *Thompson* v. *Williams,* 100 Md., *supra,* relied upon by the defendants, are unlike this. In that case the consideration for the conveyance to the daughter was adequate, the deed was made to secure an actual loan, and accepted in good faith, and the evidence did not show that the mortgage was made with intent to hinder and delay the creditors of the grantor.

In the present case there is no evidence whatever of the existence of any *bona fide* indebtedness, except from the testimony of the defendants, the parties in interest, and that is not satisfactory when considered in connection with the other facts and circumstances surrounding the transaction, to constitute a valid consideration for the deed.

It follows, for the reasons stated, that the Court below committed an error in sustaining the validity of the deed here in question as against the plaintiff's claim and denying the plaintiff the relief asked by the bill.

The decree will therefore be reversed and cause remanded, that a decree may be passed, in accordance with this opinion.

*Decree reversed, cause remanded, with costs to the appellants.*