ROBERTA L. TURNER AND CARROLL A. TURNER,
HER HUSBAND, AND FREDERICK E. TOBE,

*vs.*

THE HUDSON CEMENT AND SUPPLY COMPANY
OF BALTIMORE CITY, ET AL.

*Deeds in defraud of creditors*: *voluntary conveyances; hindering
creditors; solvency of grantor; incumbrances on property;
creditors' rights; running accounts; subsisting cred-
itors. Husband and wife: property by entireties;
request of wife to deed to daughter; parent
and child; services to parent; not
consideration for deed.*

A husband has no right to prejudice his creditors by giving
away money that is distributed to him from the estate of his
wife who diès intestate.                           pp. 142, 147

Where a deed is attacked as being in defraud of creditors,
and the solvency of the grantor is being taken into account,
the fact that most or part of his assets are encumbered by
prior mortgages and that some of the assets consist of unfin-
ished houses is proper to be considered.               p. 139

If there is reasonable doubt of the adequacy of the grantor's
means, or if the circumstancès be such that delays, difficulties
and expenses must be experienced before this property can
be made available to his creditors, a voluntary conveyance by
him must fall, because it has the effect of delaying and hinder-
ing his creditors.                                 pp. 139-140

Where a husband and wife own property by the entireties,
a request by the wife that the husband convey the property to
the daughter is no valid consideration for such a conveyance if
the husband's creditors would thereby be injured.        p. 141

When a child renders services to the parents without agree-
ment or compensation, it does not constitute such a valid con-
sideration as to make a conveyance in satisfaction thereof good
as against creditors.                                p. 142

Where a conveyance is attacked for being in defraud of creditors, the fact that the property thereby conveyed was acquired after the date that the debts of the attacking creditors were created is not, in general, a defense; but in such cases actual fraud is not to be presumed, and must be satisfactorily shown before such creditors can have the deed set aside.    p. 143

Where a deed is attacked as being in defraud of creditors, creditors are entitled to be considered as subsisting creditors where there was a running account, and although some of the debts may have been paid off in full when the deed was executed, yet other debts of equal or larger amount were created and remained unpaid at the time when the deed was complained of.                    p. 149

Where subsequent creditors to a deed wish to attack the same as being fraudulent, the burden of proof is upon them to show that it was the intention and design of the grantor and grantee to defraud those who would thereafter become creditors.    p. 145

Where a lumber mill company was among the creditors who attacked a deed as being in defraud of creditors, and the mill company had been paid for the lumber that entered into the construction of the house that was upon the land conveyed by the deed, they may not participate in the proceeds of the sale of the house, without first deducting therefrom the value of the materials that had been furnished by them and paid for.
                                                                       p. 148

*Decided June 20th, 1918.*

Appeal from the Circuit Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Benjamin Rosenheim* and *Myer Rosenbush,* for the appellants.

*John C. Kumpf* and *Ferdinand C. Dugan* (with whom was *Meyer Steinberg* on the brief), for the appellees.

Boyd, C. J., delivered the opinion of the Court.

The bill of complaint was filed in this case by the appellees against the appellants to set aside two deeds made by Frederick E. Tobe to his daughter, Roberta L., who is now Mrs. Turner, a deed from Roberta L. Turner and her husband to said Tobe and a lease from him to his daughter, and to sell the property described in the deeds and apply the net proceeds to the payment of the claims alleged to be due the plaintiffs. The American Exchange and Savings Bank and the West North Avenue Savings and Loan Association, mortgagees, were also made defendants. A decree was passed adjudging, (1) that Frederick E .Tobe was indebted to the Lafayette Mill & Lumber Co. in the sum of $6,454.00, to the Hudson Cement & Supply Company in the sum of $664.94, to George H. Harrington & Brother in the sum of $187.79, and to A. Weiskittel & Son Company in the sum of $191.39; (2) that the deeds and lease be set aside, and (3) that the properties, or so much thereof as may be necessary, be sold subject to the mortgages thereon. From that decree this appeal was taken.

The evidence shows that Frederick E. Tobe was what is spoken of as a "bonus builder," and had been for some years. In this instance a Mr. Lauer made an arrangement with Mr. Tobe, and after Mr. Lauer's death his wife continued the arrangement, by which she advanced at different stages of completion of the houses built on her property seventy-five per cent. of the cost, and then made leases to Tobe subject to ground rents, varying from $70.00 to $120.00 per annum. He then executed mortgages to her to secure the amounts so advanced. The appellees furnished Tobe with materials used in the houses. This had been going on for some years, and the Hudson Cement & Supply Co. and the Lafayette Mill & Lumber Co. had large dealings with Tobe.

On May 5th, 1910, Tobe assigned to his wife, for a consideration named in the deed as $3,500.00, a leasehold property known as No. 2403 West North avenue, subject to an

annual ground rent of $120.00. On the same day she gave a mortgage to the West North Avenue Savings and Loan Association for $1,040. On May 7th, 1914, the Provident Realty Corporation conveyed to her and to her husband, as tenants by the entireties, a property known as 2804 Garrison avenue. On that day they gave a mortgage on that property to the West North Avenue Savings & Loan Association for $1,768.00. Mrs. Tobe died on November 8th, 1914, and her husband qualified as her administrator on November 12th. On November 24th an inventory was returned which included the leasehold property on West North avenue, appraised at $2,500.00. On the same day the administrator filed an account distributing that property—one-third to himself, as surviving husband, and two-thirds to his daughter—Roberta L. Tobe (now Turner). On the same day he executed a deed as administrator conveying the property to himself and his daughter in the proportions mentioned, and also on that day assigned his third interest in that property to his daughter. On February 17, 1915, Roberta L. Tobe gave a mortgage on the North avenue property to the West North Avenue Savings & Loan Association for $1,976.00—the other mortgage having been taken up or paid off. On December 3, 1914, Frederick E. Tobe conveyed to his daughter the Garrison avenue property. On August 11, 1915, she mortgaged it to the American Exchange and Savings Bank for $3,500.00. The same day she and her husband conveyed it to Frederick E. Tobe, and he leased it to her, reserving a ground rent of one cent per annum.

We do not deem it necessary to discuss the transfer of the Garrison avenue property from Mr. and Mrs. Turner to Tobe and the lease from him to his daughter, as they were evidently made simply for the purpose of making it leasehold, instead of fee simple property. We do not understand the appellees to question the title of Mrs. Tobe to those two properties, and the bill does not attack the deeds to her. As the one-third interest in the leasehold on West North avenue was

distributed to him, and as the survivor of his wife he became entitled to the Garrison avenue property in fee, they being tenants by entireties, our inquiry will be confined to his right to convey them to his daughter.

It would have saved us some labor in ascertaining the amounts of the liabilities and assets of Tobe at the dates of the transfers, if more concise statements giving them had been in the record, but for the purposes of this opinion it will be sufficient to adopt the admission in the appellants' brief and what Mr. Tobe himself testified to. In that brief is the following:

"Liabilities of F. E. Tobe, December 3, 1914:

| | |
|---|---|
| Lafayette Mill & Lumber Co.............. | $5,455.77 |
| Hudson Cement & Supply Co............... | 1,311.00 |
| Harrington & Bro....................... | 317.00 |
| Sundry other creditors................. | 500.00 |
| Total liabilities, December 3, 1914...... | $7,583.77." |

In the examination in chief of Mr. Tobe this appears: "Q. That made your total assets on December 3, 1914, $11,725, is that correct? A. About that, yes. Q. And your total liabilities as $7,583.77? A. About that. Q. Making you have an excess of assets over liabilities of $4,142.00, is that right? A. Yes."

The appellants contend that at the dates of those transfers he had ample property to meet his obligations, and hence he had the right to convey the properties to his daughter, but without taking up each item included in the statement of his resources, it is clear that most of them were subject to reductions. The ground rent and interest on prior mortgages had to be deducted out of the proceeds of sales that he made, but were not allowed in the estimates of resources. There were other items which were at least questionable, and if not allowed, as the appellees contend they should not be, there was no excess of assets at the time of the transfers. But without discussing them, and conceding that there was the nominal excess testified to by Tobe, the evidence showed that he was

contracting new debts and making use of the assets he had, which were of a very doubtful character—being dependent upon his ability to sell the property. The mortgages he had were second or third mortgages and the equities in other properties were on unfinished houses, and leasehold lots, the titles to which were not as a rule in him. That they were of a most unsatisfactory character is shown by the fact that when there was a foreclosure of some of the mortgages the property brought much less than the estimates of Tobe and nothing went to the second mortgages on them. The collection of those which were collected was postponed until Tobe could make sales of the properties, which of itself would in many instances have delayed the creditors for several years if they had to rely on them. We can have no doubt that when he transferred the properties to his daughter he did not have sufficient assets, or of such kind as authorized him to do so.

In one of the latest cases in this Court on the subject— *Wilmer* v. *Placide*, 131 Md. 406—we quoted from *Goodman* v. *Wineland*, 61 Md. 449, where it was said that: "It is a 'hindrance' to creditors for a debtor to dispose of his real property and tangible chattels, which are readily subjected to execution, and compel them to rely upon merely personal obligations, with the risks and the necessity for numerous attachments usually incident to such a resource."

In the *Wineland case* it was contended that he had ample means outside of what he had conveyed to his wife, and immediately preceding what we have quoted above, the Court said: It is further to be observed, that in showing the debts due to Wineland, they are not such means as can be considered equal to real and personal property, such as was conveyed to his wife, in their availibility to creditors for *the prompt satisfaction* of their claims."

In *Bullett* v. *Worthington*, 3 Md. Ch. 99, the Chancellor, on page 106, said: "If there be a reasonable doubt of the adequacy of his means, or if his property be so circumstanced that delays, difficulties and expense must be encountered before it can be made available to his creditors, then, as I con-

ceive, the voluntary conveyance must fall, because then it has the effect to delay and hinder his creditors."

That was quoted with approval by JUDGE ECCLESTON in *Williams* v. *Banks,* 11 Md. 198, and was not disapproved of by the other judges in that case, and was later approved in *Warner* v. *Dove,* 33 Md. 579. In the latter case, the effort was to set aside three sales of real estate which had been conveyed to the wife by third parties. While under the circumstances there proven the Court refused to set aside the deeds, the decision does not support the contention of the appellant that the appellees are not entitled to relief, because the properties owned by Tobe at the time he made the deeds were of the same character as those he had when the debts were contracted, as the facts were so different. It was there said: "The evidence in our judgment shows beyond reasonable doubt that the husband at the time of these gifts was in prosperous circumstances, unembarrassed and possessed of ample means consisting of the same kind of property that he had when the debts of this firm were contracted, to pay all the debts he then owed, and that the settlement was a reasonable one. He had remaining of such property and assets more than ten times the amount of this, the only pre-existing debt." In this case Tobe was not *"in prosperous circumstances, unembarrassed,"* and it is not shown "beyond reasonable doubt" that he was *"possessed of ample means,"* etc. The Court went on to say: "It is to be observed, this is not a case where a party possessed of real estate and also of assets of this description conveys the former, which is unencumbered, visible, tangible and easily accessible to creditors, in settlement upon his wife and family and leaves his creditors to resort to the latter, where their remedy might be more precarious and difficult, and the property, at all events, less readily and conveniently accessible to their claims. A conveyance of that character would of necessity operate to hinder and delay creditors in the collection of their debts, and for that reason would be void, though enough might be shown to remain for their

eventual satisfaction, as was decided by the Chancellor in *Bullett* v. *Worthington,* 3 Md. Ch. 99."

The Court in another part of the opinion referred to the fact that it did not appear that the husband owned any real estate.

There can be no doubt that these deeds were voluntary and without sufficient consideration to support them. Tobe said, in reply to the request of his attorney to state why he transferred those properties: "The principal consideration and the whole consideration was that my daughter had taken care of my wife, taken care of the house, looked after everything in general and my wife wanted her to have it," and in reply to another question said: "The primary interest in that was the service my daughter rendered my wife and myself during my wife's illness, of nearly three years." The daughter stated the consideration to be that, "The properties were bought with my mother's own money and by her request they were given to me—by her request I was to receive everything that was her's." A sufficient answer might be, as far as the Garrison avenue property is concerned, that it was not her mother's to give, as it was conveyed to her and her husband, as tenants by the entireties, and that too only six months before her death. A wife and husband can not thus hold property, and then during the illness of the wife, when there is every probability of the husband surviving her, claim as a valid consideration for the transfer of the property, a request that the husband give it to their daughter, if the husband's creditors will thereby be injured. It is very commendable in a husband to carry out the wishes of his wife, if he is in such financial condition as he can properly do so, but not if it is at the expense of his creditors. According to the evidence of the daughter, her mother dealt very generously with her in her lifetime—gave her nearly $3,000 in cash, bank stock and some other property, but she did not either give her the North avenue property in her lifetime or leave it to her by will. The daughter was just twenty-one years of age when her mother died, and had lived with her parents all of her life up to that time.

Since then she has lived with her father, or, as she says, her father lives with her. Even when a child is over age and, while residing with his parents without any agreement for compensation, renders them services, that does not constitute a valuable consideratioin for a conveyance, as against creditors. *Sunderland* v. *Ebling,* 125 Md. 686.

There can be no doubt in this case about the knowledge of the grantee of her father's financial condition. She kept his accounts, drew checks and notes for him and in most respects seemed to be as familiar with his affairs as he was. She is clearly chargeable with such knowledge as is necessary to bind a grantee, in a proceeding to set aside deeds and we will not discuss that branch of the case further.

It is said on the part of the appellants that the credits were not given on the faith of the ownership of the properties in question. From the 7th of May, 1914, the creditors had the right to look to some interest of Tobe in the property on Garrison avenue and Lafayette Mill & Lumber Co. accepted renewals of some of its notes between that date and the transfers to the daughter, but we do not understand that to be a material question in this case. He had the titles to the properties in him, and he was largely indebted when he transferred them to his daughter. It could scarcely be contended that if a man is in debt and inherits property, or it becomes vested in him as a tenant by entireties, he can give it away and deprive his creditors of it, merely because he did not own it when the debts were contracted.

The law in this State is well settled as to the rights of creditors against debtors making voluntary deeds. In *Kane* v. *Roberts,* 40 Md. 590, after citing *Williams* v. *Banks, supra; Cooke* v. *Kell,* 13 Md. 469, and *Moore* v. *Blondheim,* 19 Md. 175, the Court said: "These cases hold that a voluntary deed, which is fraudulent in law, is void as against preexisting creditors, and also that a voluntary deed, which is made with the design to defraud subsequent creditors, may be impeached by those so defrauded. But they also hold

that where a voluntary deed is made without design to defraud subsequent creditors and is recorded, it is valid against all subsequent creditors, because they deal with the party with knowledge, either actual or constructive, of the existence of the conveyance." It is there also said, that a deed that is fraudulent and void against the grantor's subsisting creditors, is valid if recorded against subsequent creditors "When there is nothing in the deed itself, and no evidence offered tending to prove that any fraud was intended against the latter."

In *Matthai, Ingram & Co.* v. *Heather*, 57 Md. 483, the Court reiterated the rule announced in prior cases that a voluntary conveyance made by a party solvent at the time may be impeached and set aside by subsequent creditors, "provided it be executed with the *intention and design to* defraud those who shall thereafter become his creditors," but it was there said that in such case "the fraudulent purpose will not be *presumed*, but must be *proved*. The onus rests on the parties assailing the deed to establish the fraudulent intent by satisfactory proof." In *Diggs v. McCullough*, 69 Md. 592, the Court quoted from *Moore* v. *Blondheim, supra,* and held, referring to the syllabus for convenience, "A deed, fraudulent in fact, cannot by registration be made effective against subsequent creditors when it was made to defraud, or bar their right to impeach it," and it was decreed that the deeds assailed were executed with the intent to hinder and delay creditors, and to defraud persons who might become creditors thereafter, and that in consequence they were void and must be set aside. In *Scott v. Keane*, 87 Md. 709, it was contended that there was no such thing as *fraud in law* as affecting subsequent creditors, and that as no actual fraud was proven the bill should be dismissed, but it was held that a voluntary deed may be avoided by subsequent creditors where no actual fraud is proved to have existed, if the provisions of the deed itself are fraudulent in law. It was held that the deed in that case was void as to subsequent creditors, whether they had notice of it or not.

In *Spuck* v. *Logan and Uhl*, 97 Md. 152, it was shown that there were running accounts between Spuck and the appellees—the course of dealing at first being, that for purchases made one month Spuck paid the next month, etc. He did not always pay in full and the indebtedness increased. The amount Spuck owed the appellees when the deed was made was subsequently paid, but before it was paid he had incurred other indebtedness to them, for a larger amount, and. that course of dealing continued until finally Spuck was indebted to them in the sum named in the opinion in that case. The Court said: "If that was all, we would find difficulty in reaching the conclusion contended for by the appellants, that the appellees were merely subsequent creditors. In *Paulk* v. *Cooke*, 39 Conn. 572, it was contended that the debts which existed at the time the conveyance attacked was made had been paid with one exception, and that a voluntary conveyance could only be impeached by existing and not by subsequent creditors, but that Court thus replied: 'This principle clearly has no application where there has been a continued, unbroken indebtedness. The debts are owed though they may be due to new creditors. It is a most unsubstantial mode of paying a debt to contract another of equal amount. It is the merest fallacy to call such an act getting out of debt.' In *Wait on Fraud, Con.,* sec. 103, that author in speaking of the subject says: 'The case should be treated as if the prior indebtedness had continued throughout, or as a case of a continued or unbroken indebtedness.' In this case there is all the more reason to adopt that rule, as Spuck was indebted to the *appellees* (not merely to new parties) constantly and without interruption from January 1st, 1898, and to say that under those circumstances they must be denied any rights that subsisting creditors have against a fraudulent conveyance would be protecting fraud by a distinction that should not be made in favor of the guilty against the defrauded."

Under the authorities there can be no doubt that the one-third interest of Tobe in the North avenue property and his

interest in the Garrison avenue property were liable to his
subsisting creditors, but we do not think the evidence proves
that those properties, or either of them, were conveyed with
the intent to hinder, delay or defraud his subsequent cred-
itors.   The deeds were promptly placed on record, and al-
though the burden is on subsequent creditors to show that it
was the intention and design of the grantor and grantee to
defraud those who would thereafter become creditors, *Mat-
thai, Ingram & Co.* v. *Heather, supra,* that is not satisfac-
torily shown.   The principal difficulty we have is to apply
the law to the peculiar facts of this case.   Two-thirds of the
North avenue property belonged to Mrs. Turner and were
properly distributed to her (as Miss Tobe), but the one-third
of it should go to her father's subsisting creditors.   She has
burdened that third by the mortgage to the West North
Avenue Savings & Loan Association for $1,976.00 dated
February 17, 1915, which is conceded to be valid, although
we do not know the precise amount now due on it.   If a sale
is made of the one-third, subject to the mortgage, it will
necessarily reduce the value of it to the extent of one-third
of the mortgage or more.   Anyone who would buy the third
would take into consideration the possibility of default in
the mortgage, and a sale of the whole lot, unless the mort-
gage in full was paid.   That would have a tendency to reduce
the value of the third still further.   So the only equitable
way of disposing of it which occurs to us is to decree a sale
of the whole lot subject to the mortgage, and take out of the
proceeds of sale the value of the third interest if free of the
mortgage, and the balance, if any, to be paid over to Mrs.
Turner.   We think that can be done under the prayers in
the bill including the one for general relief.   Mrs. Turner
has no right to complain of that because it was her act which
makes it necessary.   If the parties can agree upon the value
of the third interest and that is paid a sale can be avoided,
and the decree can so provide.

The creditors have actually been only deprived of the value of the Garrison avenue lot unimproved, excepting such as the little work spoken of, trenches for foundations and some stone work, which may or may not have added something to the value of the lot—subject to the mortgage on it for $1,768.00 given by Mr. and Mrs. Tobe when it was purchased. All that Mrs. Turner claims to have expended in making the improvements on the lot is the proceeds of the mortgage given to the West North Avenue Savings and Loan Association ($1,976), the difference between the mortgage given August 11, 1915, on the Garrison avenue property for $3,500.00 and the mortgage given on it May 7, 1914, for $1,768.00, which difference she and her father estimate at $2,000.00 (part of the $1,768 mortgage having been previously paid, and the balance having been paid when the new mortgage was given) and $2,929 which she says her mother had in cash and gave to her.

Mrs. Turner and Mr. Tobe both swore that the sum of $2,929.00, or thereabouts, was in the safe at the house in the lifetime of Mrs. Tobe and belonged to her. Without prolonging this opinion by giving our reasons, we are compelled to say that there is some doubt as to whether it was there, but giving them the benefit of the doubt, we are convinced that there was no such gift of that money as the law can recognize. Mrs. Turner was asked: "Whose (money) was it at the time of your mother's death?", and replied, *"It was her money at the time of her death. Q. Her money? A. It was her money and she had given it to me. She had collected it and given it to me before her death. It was to be my money."* On cross-examination she testified: "Q. You got some of it away back in 1913, and some back in 1912, you were not going to use it then, were you? A. It was my mother's at that time, it was not mine. Q. When did it become yours? A. *It became mine at her death.* It was mine in word and deed, but hers to use as she saw fit up until that time." That and other evidence we might refer to

satisfy us that her mother never did in fact part with it, and the most that could be said was that she intended that her daughter should have whatever was left of it after her death, but she left no will, and made no sufficient delivery of it in her lifetime. It should, therefore, have been accounted for in the settlement of her estate, and her husband was entitled to one-third of it, which he had no right to give away to the prejudice of his creditors.

Some doubt is cast on the $1,976 transaction by reason of the fact that the same amount was deposited in Tobe's bank account on the day the mortgage for that sum was given, but Tobe denied that it was the same and it was not traced. But assuming that it was the same, if it was paid out on account of the improvements it can make but little difference whether it was deposited in his account or placed in the safe as Tobe and his daughter said. If the appellees' evidence that the property is worth from $14,000 to $15,000 is correct, undoubtedly as much as appellants claim went into the house and spent on the improvements, and the mortgage was given for the $1,976, as shown above.

We thus have the $1,976 given by Mrs. Turner, subject to what we have said above, the $3,500, and she was entitled to two-thirds of the $2,929, as the only child of Mrs. Tobe. The property will have to be sold subject to the $3,500 mortgage and Mrs. Turner will be entitled to be repaid the $1,976 obtained through the mortgage spoken of above (provided the North avenue property protects the creditors from loss as to the third interest of Tobe, and, if it does not, they should be protected out of the proceeds of the Garrison avenue property) and two-thirds of the $2,929. As she has lived in the property, we do not think interest should be allowed her.

The evidence shows that the Lafayette Mill & Lumber Co. sold considerable quantities of materials for the house erected on Garrison avenue and it was paid for it. The exact amount we do not know. The company had furnished some material for it before the death of Mrs. Tobe, in her name. After

her death the manager of that company called on Mr. Tobe to see what was to be done. It was agreed that the materials were still to be furnished in the name of Mrs. Tobe, which was done. Tobe told him that he had the money to pay all the bills contracted for that house, and that the account would be paid the first of every month. He said that Tobe told him when they started the job that it was Mrs. Tobe's house and he was going to pay the bills on that every month. The bills were paid and there is nothing due that company on account of that house. Nor is there anything to show that any misrepresentation was made to the company, and, although it is not proved that the officers had actual knowledge of the deed that Tobe made to his daughter, it was on record and the manager certainly knew enough to put him on inquiry. Under those circumstances, it would seem to be inequitable to permit that company to furnish materials for the house, get paid for them, and then as a subsisting creditor at the time of the transfer, profit by the increased value of the property caused by the materials which it furnished and was paid for. It must be remembered that what the creditors had the right to, at the time of the transfer, was the value of the property as it then stood, which had vested in Tobe as a tenant by the entireties. The only doubt we have had is whether or not under the circumstances the Lafayette Company should not be held to be estopped to make any claim against this property. The facts in the record do not seem to justify that, but we are of the opinion that it should not be permitted to participate in the distribution of the proceeds of sale of that property without first deducting from its account the amount it furnished, and was paid, for that house.

The same principle should be applied to the Hudson Cement and Supply Company's account. The company is a subsisting creditors within the meaning of what we have said in *Spuck's case*. While payments in full were made at times, and the amount due when these transfers were made was

afterwards paid, almost immediately other indebtedness was created. There was practically a running account right along. Sometimes there was a day or two between the payment and the new indebtedness, but the debt was practically a continuous one. The same thing seems to be the case as to the account of George H. Harrington & Brother. From the statement in the record there is nothing to show that the account of A. Weiskittel & Son Co. was in existence prior to July 10, 1915. If that is the case, it can not be allowed.

The lower Court can take testimony, if it deems that proper, as to these and other accounts, so as to ascertain whether the claims are held by subsisting creditors within the meaning of what we have said—remembering that where there was a running account, the fact that it was settled in full, but immediately, or within a day or two, a new indebtedness was contracted, such creditor under the principle announced in *Spuck v. Logan & Uhl* can be treated as subsisting, but where the account was fully settled with no arrangement or expectation of immediate continuance, the party must be held to be a subsequent creditor, and as such no distribution can be allowed in this case.

It follows that the decree must be reversed and the cause remanded, so that a decree may be passed in accordance with this opinion, after taking such testimony as authorized above or the lower Court may deem proper. Much of the evidence in the record is in regard to the resources and liabilities of Tobe, but there can be no doubt that he was not authorized to convey those two properties, and no further testimony is needed on that question. Most of the questions of fact left in doubt should readily be agreed to, or so presented by an agreed statement as to avoid taking much, if any, new testimony. We will direct that the costs be equally divided between the appellants and the appellees.

> *Decree reversed and cause remanded, the costs to be equally divided between the appellants and the appellees.*